IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**AMIE CREEL**                                                                                          **PLAINTIFF**

**v.**                                                                           **CIVIL NO. 2:21-cv-00039-HSO-BWR**

**COMMISSIONER OF SOCIAL**                                                      **DEFENDANT**
**SECURITY**

## REPORT AND RECOMMENDATION

Plaintiff Amie Lynn Creel seeks judicial review of the final decision of the Commissioner of Social Security Administration denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 423(d)(1)(A), and Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3). Plaintiff filed a Motion for Summary Judgment [17] and Memorandum in Support [18]. The Commissioner filed a Response [20] and Plaintiff a Rebuttal [21]. Having reviewed these submissions, the administrative record, and relevant law, it is recommended that the decision of the Commissioner be affirmed because the administrative law judge (ALJ) adequately informed Plaintiff at the administrative hearing of her right to counsel and Plaintiff validly waived that right.

### I. BACKGROUND

Plaintiff completed the tenth grade and earned a general equivalency diploma. [14] at 27-28. She worked in the past as a cook, scrapper/salvager, and hospital food service worker. *Id.* at 41, 168-70, 175-82. Plaintiff filed applications for DIB and SSI in September 2018, alleging disability beginning March 1, 2016, when she was thirty-

five years of age. In her application, Plaintiff alleged that she was disabled because of congenital spine disease, diabetes, thyroid disease, chronic migraines, neuropathy, depression, arthritis, and carpal tunnel syndrome. *Id.* at 167. Her application for benefits was denied initially, and Plaintiff requested reconsideration. *Id.* at 107. Her request for reconsideration was denied, and Plaintiff then requested a hearing before an ALJ.

Plaintiff objected to a video hearing and agreed to a telephone hearing, which was an option due to the circumstances presented by the coronavirus in 2019. [11] at 20. The ALJ conducted a telephone hearing, where Plaintiff proceeded without representation. She and a vocational expert testified. The ALJ issued a decision unfavorable to Plaintiff, finding that she suffered from the following severe impairments: lumbar spine, right shoulder, asthma, and morbid obesity. [11] at 22. The ALJ found that Plaintiff's cervical and thoracic spine problems, bilateral hips, bilateral knees, carpal tunnel syndrome, neuropathy, diabetes mellitus, gastroesophageal reflux disease, hypothyroidism, hypertension, headaches, depression, and anxiety were not severe impairments. *Id.* at 23-24.

The ALJ concluded that

> [s]ince the Title 16 application date: no climbing ladders, ropes or scaffolds; other postural activities at occasional; no overhead work dominant right upper extremity; avoid concentration of pulmonary irritant such as dust, smoke, strong odors; avoid working at unprotected height and around hazardous machinery, while being 5'7" tall, weighing 353 pounds. However, prior to the date last insured (DLI), she could perform a modified range of light work per Disability Determination Services (DDS) functional capacity examination (FCE) with the additional limitation of standing/walking 2 hours in an 8 hour workday.

[11] at 25-26.

The ALJ found that Plaintiff could not perform her past work but could perform other jobs existing in significant numbers in the national economy, such as the sedentary and unskilled occupations of account clerk, address clerk, and order clerk. *Id.* at 30-31.

After the administrative hearing, Plaintiff obtained counsel, and her counsel requested review by the Appeals Council. [14] at 135. The Appeals Council denied the request for review, making the ALJ's decision the final decision of the Commissioner and subject to judicial review under 42 U.S.C. § 405(g).

On judicial review, Plaintiff alleges one assignment of error. She argues that she did not knowingly and intelligently waive her right to counsel because the ALJ failed to orally inform her at the administrative hearing "of the manner in which an attorney could aid in the proceedings, the possibility of free counsel or contingency arrangement, or the limitation of attorney fees by law." [18] at 10.

The Commissioner counterargues that Plaintiff validly consented to proceed without representation because she received three written notices of her right to representation before the administrative hearing, indicated during a pre-hearing telephone call with a Social Security Administration representative that she understood her right to representation, and those pre-hearing notices, coupled with the ALJ's reminder at the administrative hearing, adequately informed Plaintiff of her right to representation. [20] at 4.

3

II. DISCUSSION

A. Standard of Review

The Court reviews the Commissioner's denial of Social Security benefits only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Salmond v. Berryhill*, 892 F.3d 812, 816-17 (5th Cir. 2018). The Court does not "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision. *Salmond,* 892 F.3d at 817. "A decision is supported by substantial evidence if credible evidentiary choices or medical findings support the decision. Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* (citations and punctuation omitted).

"To determine whether a claimant is disabled, the Commissioner's analysis proceeds along five steps." *Webster v. Kijakazi,* 19 F.4th 715, 718 (2021); *see* 20 C.F.R. § 404.1520(a)(4). The Commissioner considers (1) whether the claimant is engaged in "substantial gainful activity," (2) the severity and duration of the claimant's impairments, (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations, (4) whether the claimant can still do "past relevant work," and (5) whether the impairment prevents the claimant from doing any relevant work. *Id.* "The claimant bears the burden on the first four steps." *Id.* "If the claimant advances that far, the burden shifts to the Commissioner to 'prove the claimant's employability.'" *Id.*

B. Analysis

1. Plaintiff has failed to show that her waiver of counsel was invalid

"A claimant has a statutory right to counsel at a Social Security hearing," *Norden v. Barnhart,* 77 F. App'x 221, 223 (5th Cir. 2003) (citing 42 U.S.C. § 406) and must receive adequate notice of his or her right to representation. *See* 42 U.S.C. § 406; 20 C.F.R. §§ 404.1706, 1720 and 416.1506, 1520. "[T]he right to counsel may be waived when the claimant is given sufficient information to enable her to decide intelligently whether to retain counsel or proceed *pro se*." *Hughes ex rel. T.H. v. Astrue*, 493 F. App'x 594, 596 (5th Cir. 2012) (citing *Castillo v. Barnhart,* 325 F.3d 550, 552 (5th Cir. 2003). "'Sufficient information' includes explanations of the possibility of free counsel, a contingency agreement, and the limitation on attorney's fees to 25% of past due benefits awarded." *Norden,* 77 F. App'x at 223 (citing *Clark v. Schweiker,* 652 F.2d 399, 403-04 (5th Cir. 1981)). If a claimant does not receive sufficient information to make a knowing and intelligent decision about waiving counsel, remand will be warranted, but only if a showing has been made that the claimant "was prejudiced due to the absence of counsel at the hearing." *Castillo,* 325 F.3d at 552. Prejudice means that the claimant, with the assistance of counsel, "'could and would have adduced evidence that might have altered the result.'" *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (quoting *Kane v. Heckler,* 731 F.2d 1216, 1220 (5th Cir. 1986)).

The Commissioner relies on the decision of the Court of Appeals for the Fifth Circuit in *Castillo v. Barnhart,* where the claimant's argument that she was not

properly notified of her right to obtain representation was rejected. 325 F.3d at 552. The Fifth Circuit reasoned as follows:

> Castillo acknowledges that she was told that she could be represented during the proceedings below, but she asserts that she was not adequately informed of relevant facts related to obtaining a representative. A claimant is entitled to adequate notice of her right to counsel at a hearing before an ALJ. We conclude that the numerous written notices Castillo received – along with the ALJ's reminder to Castillo at the hearing of her right to counsel – sufficiently informed her of her right to an attorney, and that she validly consented to proceed without representation.

*Id*.

Like the claimant in *Castillo,* Plaintiff received several written notices prior to the administrative hearing, which provided the very information that Plaintiff alleges she was not informed of orally by the ALJ at the administrative hearing. [11] at 43, 48-49; [14] at 112, 122, 125-26, 127-28. An October 25, 2019, letter from the Social Security Administration to Plaintiff denying her request for reconsideration and informing her of the right to a hearing before an ALJ, provided:

> **You may have a Representative**
>
> You may want a lawyer, friend, or other qualified person to represent you. If you have a representative, you may have to pay his or her fees. For more information about representation and about the fees a representative may charge, read *Your Right to Representation Publication No. 05-10075.* If you decide to have a representative, you need to tell us in writing as soon as possible. To do this, use Form SSA-1696-U4 *Appointment of Representative . . . .*

[14] at 112.

A December 17, 2019 letter from the Social Security Administration to Plaintiff, acknowledging her request for a hearing before an ALJ, explained the hearing process, and provided:

> **Your Right to Representation**
>
> You may choose to have a representative help you. We will work with this person just as we would work with you. If you decide to have a representative, you should find one quickly so that person can start preparing your case.
>
> Many representatives charge a fee only if you receive benefits. Others may represent you for free. Usually, your representative may not charge a fee unless we approve it. We are enclosing a list of groups that can help you find a representative.
>
> If you get a representative, you or that person must notify us in writing. You may use our form SSA 1696-U4 Appointment of Representative.

[14] at 122.

Enclosed with the December 17, 2019 letter was SSA Publication No. 05-10075, entitled "Your Right to Representation" which is a two-page, single-spaced document explaining what a representative can do, how to choose a representative, and what a representative may charge. [14] at 125-26. Also enclosed was a document listing groups that could help a claimant find representation, and it reiterated that a claimant had a right to a representative and advised that "most representatives do not charge a fee unless your claim is successful and you receive benefits. Usually, your representative may not charge a fee unless we approve it." [14] at 127-28.

A Notice of Hearing issued on March 5, 2020, and provided:

> **If You Want Help With Your Appeal**

> You may choose to have a representative help you. We will work with this person just as we would with you. If you decide to have a representative, you should find one quickly so that person can start preparing your case.
>
> Many representatives charge a fee. Some representatives charge a fee only if you receive benefits. Others may represent you for free. Usually, your representative may not charge a fee unless we approve it. If you get a representative, you or that person must notify us in writing.

[11] at 43.

Enclosed with the Notice of Hearing was SSA Publication No. 05-10075, entitled "Your Right to Representation." [11] at 46, 48-49.

A "Report of Contact" form cited by the Commissioner shows that Plaintiff received further notice of her right to representation through a pre-hearing telephone contact on January 14, 2020. [14] at 244. A Social Security Administration representative noted on the contact form that she "[p]rovided the Claimant information regarding his/her Right to Representation and the Claimant affirmed understanding of that information[.]" *Id.*

The following lengthy quotation from the administrative hearing gives context regarding what occurred when Plaintiff appeared at the administrative hearing without representation:

> **ALJ**: Now, ma'am, you don't have a representative. Is there any particular reason why you don't have a representative?
>
> **Plaintiff**: No, sir, I just didn't – [inaudible], and the problems that I'm having, and not being able to [inaudible], I mean –
>
> **ALJ**: All right. But, you know you were already turned down twice to get disability benefits. I assume you were on your own on those occasions when you tried to get benefits through Disability Determination

8

Services. They found that you had the capacity to work, and under our rules if you can work, we're not going to find you disabled.

I'm not trying to – I'm trying to – I mean, if you want to proceed without a representative, you have every right to do so, but I have to make sure you understand that you have that right, and that even though you can seek to have a representative, you want to go forward on a hearing without one.

**Plaintiff**: Yes, sir, I do because I just needed to see a doctor. I didn't know that I could see a doctor to inform me that I was having – I had documentation when I went in, and they talked to me about needing surgery, and everything.

**ALJ:** Okay. All right. I can get into that with you during the course of the hearing. Now, ma'am, also, when is the last time you looked at your file, or have you ever looked at your file?

**Plaintiff**: From my doctors, or from the disability?

**ALJ**: For disability. We maintain a file of your evidence, you know, records come to us, your medical records, and whatnot, come to us, so I – for example, I have looked at your file. I know what medical evidence we have in your file pertaining to you, and I'm wondering have you had a chance to look at your file?

**Plaintiff**: No, sir, I haven't.

**ALJ**: Because you have a right to look at your file before the hearing. That way you can see what's in there, you may have a problem, you may have an objection to some of the evidence in your file, okay? And you may want to tell me about any objection you have.

Also, you could look at your file and say, Judge, you know, I've been to this place, that place for medical examinations, and treatment, but it's not in the file, and then we'll help you get those records. Do you see what I'm saying?

**Plaintiff**: Yes, sir. I don't have no computer. All I have is my cell phone, sir.

**ALJ**: Well, I could do one of two things. I can hold off on making a decision until such time as we can make your file available to you to review, okay, and you're absolutely entitled to that, and I'll hold off on

9

making a decision until we're able to in one way or another make your file accessible to you so you can review it, okay.

On the other hand, you may not feel that it's that important to you, and that when I have the evidence, and I'm ready to make a decision, I can go ahead and make a decision. Which one would you like me to do?

Would you like me to hold off on making a decision until you are able to review your file, or that doesn't matter to you, whenever I'm ready to make a decision to just go ahead and make a decision?

**Plaintiff**: Is there a way that I can review it other than the computer? Is there like you can send me paper documents, or something, because I don't have no way to review the CD that you all have sent me.

**ALJ**: No, I understand. You know, we're sending files to people by email, but you said you don't have a computer, so I guess, you don't have an email address where we can send your file?

**Plaintiff**: Yes, sir, I do have an email on my cell phone.
. . .

**ALJ**: Okay. You know, we can send records, Ms. Creel, to email addresses. I don't know how big your – the capacity of your cell phone is, whether it will receive the records. I don't know how much space it would take up. We can try to do that.

And I will say this also, you know, a cell phone is kind of small, and trying to read things, you can do it, but it just makes it a little bit more difficult to read things. Do you understand what I'm saying?

**Plaintiff**: Yes, sir.

**ALJ**: But I would leave that up to you.

**Plaintiff**: [inaudible] with it?

**ALJ**: Ma'am?

**Plaintiff**: Do you want to just go ahead and do the judgment because, I mean –

**ALJ**: No, don't ask me. No, no, no, it's not my choice to make; it's your choice to make, you know. What I'm telling you is we can try to send the

10

email to you, and if we're successful, you'll have a way to look at, you know, the exhibits in the file, okay.

And, then you can get back to us and say, Judge, I don't think you ought to consider this particular exhibit for this particular reason, and then I'll take that into consideration.

You can tell us, well, Judge, I noticed you don't have certain evidence in the file, and here are the places where I have gone, and there would be records, and we'll help you get that. Do you see what I'm saying? So you can give us feedback if we're able to send you the email.

**Plaintiff**: Okay.

**ALJ**: Now, if we try to send you the email, and we cannot do it, then it puts me back to where I am right now, which is do you want me to hold off on making a decision until you are able to look at your file, or do you want me to go ahead and make a decision on your case even though you have not yet looked at your file?

**Plaintiff**: Let's just go ahead and get it done.

**ALJ**: All right. You're saying if assuming you don't – you're not able to look at your file, I can still go ahead and make a decision?

**Plaintiff**: Yes, sir.

**ALJ:** Okay. All right then. Now, let's see, now, I don't know if anybody has ever explained to you, Ms. Creel, how we go about determining whether, or not, a person is disabled. I don't like people thinking when they don't have representatives that because I'm the judge I can do whatever I want to, which is not the case. There are rules that I have to follow in determining whether, or not, a person is disabled. Would you like me to give you a summary of what that is?

**Plaintiff**: Yes, sir. I'm kind of familiar.

**ALJ**: Oh, you have been familiar – well, let me just very, very briefly then just tell you.

**Plaintiff**: Okay.

[14] at 19-24.

Plaintiff's counsel argues that the part of the transcript where Plaintiff responds, "Yes, sir, I do because I just needed to see a doctor," in response to the ALJ's question about whether she wanted to go forward without representation shows that Plaintiff "did not understand how a representative could be helpful to her, and her inability to review the record and the ALJ's decision to proceed with the hearing compounded the problem." [21] at 1. Plaintiff's counsel asserts that Plaintiff's statement that she "just needed to see a doctor" demonstrates that she had "no understanding of the real nature of the ALJ's questions and implicitly begs for a direct and clear explanation of the factors of representation in such hearings. . . ." *Id.* at 2.

Plaintiff maintains that this case is distinguishable from *Castillo* and more akin to the Fifth Circuit's decision in *Clark v. Schweiker,* where an invalid waiver of counsel was found. 652 F.2d at 403-04. In *Clark,* however, the pre-hearing written notice failed to notify the claimant of the opportunity for free representation or the limitation on attorney fees. *Id.* at 403. The claimant then stated at the administrative hearing that she had no attorney because she did not have money to get one. *Id.* at 403-04. The ALJ did not follow-up by informing the claimant about the possibility of free counsel or a contingency arrangement, and the limitation on attorney fees. *Id.* Additionally, the claimant was "functionally illiterate," and she was not told by the ALJ that she had the right to cross-examine the vocational expert. *Id.* at 404, 406.

The Fifth Circuit also found an invalid waiver of representation in *Johnson v. Astrue*, 326 F. App'x 737 (5th Cir. 2009). There, the ALJ "effectively discouraged" the claimant from exercising the right to counsel by saying, "The lawyer wouldn't make

12

no difference. You just said the medical records speak for themselves . . . ." *Id.* at 739. This Court found an invalid waiver in *Dale v. Astrue*, No. 2:11-CV-00150-KS-MTP, 2012 WL 2864403 (S.D. Miss. July 11, 2012). In *Dale,* the *pro se* claimant received pre-hearing written notices but was illiterate, and the ALJ did not verbally provide the claimant with sufficient information about the possibility of representation during the administrative hearing. *Id.* at *6.

Plaintiff is not alleged to be illiterate or mentally incompetent. She obtained a general equivalency diploma. In cases similar to this one, the Court has found that the claimant's waiver of representation was valid where the claimant received sufficient information about representation in pre-hearing written notices, and the ALJ then briefly reminded the claimant orally of the right to representation at the administrative hearing. *Upshaw v. Comm'r of Soc. Sec.*, No. 2:20-CV-49-KS-MTP, 2020 WL 8409285, at *3 (S.D. Miss. Dec. 21, 2020), report and recommendation adopted, No. 2:20-CV-49-KS-MTP, 2021 WL 354419 (S.D. Miss. Feb. 2, 2021); *Coleman ex rel. S.J. v. Colvin*, No. 3:12-CV-700 HTW-LRA, 2014 WL 906235 (S.D. Miss. Mar. 7, 2014); *Owens ex rel. Z.S.O. v. Colvin*, No. 3:12-CV-00151-CWR, 2013 WL 5406991 (S.D. Miss. Sept. 25, 2013).

Despite her current claim, Plaintiff successfully navigated each step of the administrative process through the administrative hearing before obtaining counsel and had twice before been through the process of applying for benefits. Pre-hearing written notices informed Plaintiff that an attorney could aid her, that free representation or a contingency arrangement was possible, and that attorney's fees

were limited. Plaintiff received further notice of her right to representation through a pre-hearing telephone contact. [14] at 244.

Unlike the claimant in *Clark,* Plaintiff does not challenge the adequacy of the pre-hearing notices. *See Jolivette v. Colvin*, 539 F. App'x 515, 516 (5th Cir. 2013) (finding notable that claimant did not contest adequacy of multiple prehearing written notices apprising of his right to counsel). Unlike the claimant in *Clark,* Plaintiff was given an opportunity to cross-examine the vocational expert. Unlike in *Johnson,* the ALJ did not discourage Plaintiff from obtaining counsel but instead offered to delay his decision until Plaintiff had an opportunity to review the record. In response, Plaintiff stated, "Let's just go ahead and get it done," evincing her understanding that she had the option not to go forward. Plaintiff has failed to show that her waiver of counsel was invalid.

2. <u>Plaintiff has not demonstrated prejudice secondary to absence of counsel</u>

Even if Plaintiff could show that her waiver of counsel was invalid, Plaintiff would then be required to produce evidence "that would have been adduced and that could have changed the result had [she] been represented by an attorney." *Castillo,* 325 F.3d at 552. Plaintiff maintains that had she retained counsel earlier, her counsel could have obtained and provided to the ALJ the additional medical records that he provided to the Appeals Council. The Commissioner counterargues that the additional records submitted to the Appeals Council contain "no newly adduced evidence of functional limitations that exceed the limitations that the ALJ set forth in his highly restrictive residual functional capacity determination." [20] at 5.

14

In rebuttal, Plaintiff submits that the new records reflect "several falls by Plaintiff due to leg weakness, the limited effectiveness of epidural injections on the relief of Plaintiff's pain, physical examination with limitations to range of motion and plantar flexion, an MRI showing disc protrusion with nerve impingement and left-sided sciatica, and a depression screening with diagnosis of depression." [21] at 3.

The Commissioner's argument is persuasive. While Plaintiff summarizes the additional records provided to the Appeals Council and concludes that they could have changed the outcome, she does not explain why the additional records would have changed, as opposed to merely supported, the "highly restrictive residual functional capacity determination" limiting Plaintiff to sedentary work with postural and manipulative limitations.

The ALJ reviewed years of Plaintiff's medical records and compared them to consultative examination reports. The ALJ questioned Plaintiff about her limitations. In making a residual functional capacity determination, the ALJ acknowledged Plaintiff's "burning pain from her shoulders to her back, paraspinal tenderness with limited range of motion, and some S1 radiculopathy, in combination with her morbid obesity supports greater limitations." [11] at 28-29. The ALJ acknowledged that "[l]ifting and carrying heavy items and performing postural activities may exacerbate low back pain, shoulder pain, morbid-obesity related complications, and associated weakness." *Id.* at 29. The ALJ considered Plaintiff's depression. *Id.* at 24.

Plaintiff's argument that she was prejudiced overlooks the ALJ's observation that Plaintiff "described daily activities, which are not limited to the extent one would

15

expect, given the complaints of disabling symptoms and limitations," including caring for 21-month-old twins at home, one of which is disabled. *Id*. The ALJ emphasized that Plaintiff was "able to self-care, perform household chores, prepare meals, takes care of the dog, walks, shops, and manages her finances." *Id*. Plaintiff has not demonstrated that she was prejudiced by lacking counsel at the administrative hearing.

### III. RECOMMENDATION

Plaintiff's Motion for Summary Judgment [17] should be denied and the ALJ's July 23, 2020 decision affirmed. Plaintiff has failed to show that her waiver of representation was invalid, and alternatively, has failed to establish that she was prejudiced by a lack of counsel.

### IV. NOTICE OF RIGHT TO OBJECT

Within fourteen days after being served with a copy, any party may serve and file with the Clerk of Court written objections to this Report and Recommendation. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection. L.U.Civ.R. 72(a)(3).

A district judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further

evidence or recommit the matter to the magistrate judge with instructions. *See* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. A district judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Assoc.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED,** this the 8th day of August, 2022.

*s/ Bradley W. Rath*
HONORABLE BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE